UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
OLGA PARDO,                     )
                               )
        Plaintiff,             )
                               )
    v.                         )    C.A. No. 24-111 WES
                               )
CITY OF NEWPORT, et al.,        )
                               )
        Defendants.            )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Senior District Judge.

This is an employment discrimination case in which the Plaintiff, Olga Pardo, brings claims against several Defendants, including the Teachers' Association of Newport ("TAN" or "the union") and Erika Durand, both individually and in her capacity as TAN's Building Representative.  Before the Court are three motions.  First, TAN and Durand move to dismiss Counts XI and XII of Pardo's Amended Complaint, ECF No. 36, as against Durand ("Durand Motion"), ECF No. 39.  Second, TAN moves to dismiss Counts VII and X of the Amended Complaint as against TAN ("TAN Motion"), ECF No. 40.  Third, TAN moves to strike certain allegations in the Amended Complaint.  Mot. Strike, ECF No. 39.  For the reasons below, all three Motions are denied.

I.   **BACKGROUND**

At all times relevant to this case, Pardo was a Spanish

teacher at Thompson Middle School in Newport, Rhode Island, and a member of TAN, the teachers' union for the Newport Public Schools. Am. Compl. ¶¶ 14-18, 22.  She alleges that Durand, a French teacher whose classroom once shared a wall with hers, led a "cadre" of teachers and staff who "created a hostile work environment for persons of color," including Pardo, and conspired to deprive her of benefits stemming from her employment with the City of Newport ("the City").  Id. ¶¶ 20, 287-298.  In March 2024, Pardo filed a twelve-count Complaint asserting various claims against the City, TAN, Durand, and thirteen other Defendants.  Compl., ECF No. 1. The City filed an Answer, ECF No. 23, on behalf of all Defendants except TAN and Durand, who together filed a Motion for a More Definite Statement ("Rule 12(e) Motion"), ECF. No. 27.  TAN also filed a Motion to Dismiss.  ECF No. 29.

According to the Rule 12(e) Motion, Pardo's Complaint did not clearly indicate when Durand was acting individually or in her capacity as a union representative. R. 12(e) Mot. 2-4.  Therefore, although TAN accepted service of the Complaint against Durand, it was not clear which party — TAN or the City — had a responsibility to represent Durand in the case.  Id. at 2.  TAN and Durand thus sought an order requiring Pardo to amend her Complaint to identify which of Durand's actions, if any, were made in her capacity as a union representative.  Id. at 4-6.  As for the Motion to Dismiss,

2

TAN argued that Pardo did not state claims to relief against TAN in Counts VII and X, which were the only counts naming TAN as a defendant.  Mem. Supp. Mot. Dismiss 1-2, ECF No. 29-1.

In a June 2024 order, the Court directed Pardo to amend her Complaint — but only with respect to the allegations against Durand in Counts XI and XII — and permitted TAN to amend, withdraw, or refile its prior motions.  Text Order (June 17, 2024).  Pardo thus amended her Complaint with an additional forty-eight paragraphs of allegations, not to mention other changes.  <u>Compare</u> Compl. ¶¶ 14-162, <u>with</u> Am. Compl. ¶¶ 14-210.  In response, not only did TAN and Durand file a motion to dismiss Counts XI and XII of the Amended Complaint as against Durand, but TAN also moved to strike fifty-three paragraphs that, according to TAN, fall outside the scope of the Court's June 2024 order.  <u>See</u> Mem. L. Supp. Durand Mot. & Mot. Strike 4-6, 16-17, ECF No. 39-1.  Specifically, TAN alleges that "[i]nstead of confining the amendment to Counts XI and XII," Pardo "sprinkled in new allegations related to other counts and other people throughout the Amended Complaint."  <u>Id.</u> at 17.  TAN also filed an amended motion to dismiss Counts VII and X of the Amended Complaint as against TAN, which, if granted, would remove TAN from the case.  Mem. L. Supp. TAN Mot. 1-2, ECF No. 40-2.

Pardo filed an objection to all three motions.  Pl.'s Obj. & Mot. Amend Compl., ECF No. 46.  Regarding the Motion to Strike,

3

Pardo moved in the alternative for leave to amend her Complaint retroactively, in part because when she filed her objection, there was still time for the parties to amend their pleadings in accordance with the pretrial scheduling order. Mem. Supp. Pl.'s Obj. & Mot. Amend 27, ECF No. 46; see Pretrial Scheduling Order (June 12, 2024), ECF No. 34.

## II.  LEGAL STANDARDS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court, in reading the complaint, draws all reasonable inferences in the plaintiff's favor.  Peñalbert-Rosa v. Fortuña-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  To support a motion to strike under Federal Rule of Civil Procedure 12(f)(2), "the movant must demonstrate that prejudice would result if the offending material remained in the pleadings." Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 398 (D.R.I. 1998).

Other than to amend its pleadings once as a matter of course under Federal Rule of Civil Procedure 15(a)(1), "a party may amend

4

its pleadings only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

**III. DISCUSSION**

The Court finds that Counts XI and XII may proceed as against Durand in both her individual capacity and her capacity as a union representative.  The Durand Motion is therefore denied.  The Court also finds that because Pardo states claims to relief against TAN in Counts VII and X, the TAN Motion is denied.  Finally, the Court denies the Motion to Strike.

**A. Durand Motion (Counts XI and XII)**

Pardo alleges that Durand and three other Defendants, all teachers or staff at Thompson Middle School, committed the tort of intentional interference with economic advantage (Count XI) and engaged in a civil conspiracy (Count XII) to do so.  Am. Compl. ¶¶ 287-298.  The Court addresses whether Pardo states these claims against Durand in her individual capacity and, if so, whether these claims may also proceed against Durand in her capacity as a union representative.

**1. Whether Pardo States Claims Against Durand in Her Individual Capacity**

As against Durand, Pardo alleges facts sufficient to state a claim for intentional interference with economic advantage.  To state a claim for tortious interference, as the tort is known, a

plaintiff "must demonstrate '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom." Lomastro v. Iocavelli, 126 A.3d 470, 474 (R.I. 2015) (emphasis in original) (quoting Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000)); see also Mesolella v. City of Providence, 508 A.2d 661, 669 n.9 (R.I. 1986) (noting the different names by which the tort is known). Under Rhode Island law, a plaintiff may satisfy the third element of a tortious interference claim by showing that the defendant's conduct made the contract "more difficult" to perform. Smith Dev. Corp. v. Billow Enters., Inc., 308 A.2d 477, 482 (R.I. 1973).

Regarding the first two elements, Pardo had a contract with the City, and Durand knew about it. See Am. Compl. ¶¶ 14, 24-27. The third element presents a closer question, but the allegations permit a reasonable inference that Durand engaged in a pattern of conduct designed to frustrate the performance of Pardo's contract. That alleged pattern of conduct includes, but is not limited to, harassing Pardo to the point that she began taking free periods in her car, conspiring to falsely accuse Pardo of misconduct, barring Pardo from union meetings, turning fellow employees against Pardo, and otherwise creating a hostile work environment through her pervasive use of racist and homophobic language. See, e.g., id.

6

¶¶ 24-40, 60, 63-84, 106.  Turning to the fourth and final element, under Rhode Island law, Pardo's allegations plausibly support the damages element of a tortious interference claim, not only with respect to her alleged loss of specific economic opportunities, but also regarding her alleged reputational harm.  See D'Andrea v. Calcagni, 723 A.2d 276, 278 (R.I. 1999) (permitting damages for emotional or reputational harm in tortious interference cases when such harm is reasonably expected to result from the interference). For example, Pardo alleges the Newport Public Schools reduced her teaching days in its summer learning program — resulting in lost income — because administrators wanted to keep her and Durand away from each other.  Id. ¶¶ 170-173.

Pardo also alleges facts sufficient to state a claim for civil conspiracy against Durand.  To prove a civil conspiracy under Rhode Island law, a plaintiff must show that "(1) there was an agreement between two or more parties and (2) the purpose of the agreement was to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means."  Smith v. O'Connell, 997 F. Supp. 226, 241 (R.I. 1998) (citing Stubbs v. Taft, 149 A.2d 706, 708-09 (R.I. 1959)).  "Rather than an independent source of liability, civil conspiracy is a vehicle for demonstrating joint liability for distinct tortious behavior; and, as such, [a] plaintiff must set forth 'a valid underlying intentional tort theory.'"  Bainum

v. Coventry Police Dep't, 156 A.3d 418, 421 (R.I. 2017) (quoting Read & Lundy, Inc. v. Wash. Trust Co., 840 A.2d 1099, 1102 (R.I. 2004)).

Here, the underlying tort theory is intentional interference with economic advantage, i.e., tortious interference, for which Pardo states plausible claims against Durand and, assuming only for the purposes of this motion, at least one of the Defendants also named in Counts XI and XII. Because the Amended Complaint alleges facts sufficient to infer that Durand cooperated with one or more of these Defendants to frustrate the performance of Pardo's contract, the Court finds that Pardo's claim for civil conspiracy may proceed as against Durand. See, e.g., Am. Compl. ¶¶ 68-84 (alleging conspiracy between Durand and co-Defendant to falsely accuse Pardo of misconduct and prevent her from reporting the false accusation).

## 2. Whether Pardo States Claims Against Durand in Her Capacity as a Union Representative

The Court finds that Pardo not only states claims for tortious interference and civil conspiracy against Durand as an individual, but she also alleges facts sufficient to support these claims against Durand in her capacity as a union representative.[1]

---

[1] The Amended Complaint alleges tortious interference with economic advantage that Pardo derived from her employment with the City. Am. Compl. ¶¶ 288-292, ECF No. 36. Pardo also suggests

Therefore, TAN is potentially liable for Durand's alleged conduct under the doctrine of <u>respondeat superior</u>.  Under Rhode Island law, a "union may be liable for the tortious acts of its [officers or] members if the union authorized, participated in, or ratified the acts."  <u>Lundgren v. Pawtucket Firefighters Ass'n Local No. 1261</u>, 595 A.2d 808, 816 (R.I. 1991) (citing <u>Murphy v. United Steelworkers of Am.</u>, 507 A.2d 1342, 1344 (R.I. 1986)).  This follows from the general rule that a principal may be liable for the intentional tort of its agent, but only if the agent commits the tort "while performing a duty in the course of his [agency] and by express or implied authority from the [principal]."  <u>Drake v. Star Mkt. Co.</u>, 526 A.2d 517, 519 (R.I. 1987).  In other words, the tort must fall within the scope of the agent's duties or be approved by the principal.  <u>See</u> <u>id.</u>

The Amended Complaint describes several instances in which Durand allegedly engaged in tortious conduct while acting in her

_____

that Durand interfered with her membership in the union, but she does not plead as much.  <u>See</u> Pl.'s Obj. Mots. Dismiss & Strike Portions Am. Compl. & Pl.'s Mot. Amend Compl. 18-19, ECF No. 46. A party cannot tortiously interfere with its own contract.  <u>See</u> <u>Jolicoeur Furniture Co. v. Baldelli</u>, 653 A.2d 740, 752 (R.I. 1995). Therefore, a union representative cannot be liable in their union capacity under a theory of tortious interference for meddling with a plaintiff's union membership.  The relationship between economic advantages derived from employment with the City and those derived from union membership must be addressed, but not at this stage.

capacity as a union representative.  See, e.g., Am. Compl. ¶¶ 26-40; 70-84; 89-92, 130-134, 142-143; 106; 141-149.  Because Pardo does not specifically delineate the powers and responsibilities of a union representative, the Court is left to infer whether Durand acted within the scope of her union duties during the incidents alleged in the Amended Complaint.  With respect to some of the allegations, it is reasonable to infer that Durand was exercising the powers and responsibilities of a union representative when she engaged in the alleged tortious conduct.  Instructing union members to address work-related issues through the union representative, representing employees who might face disciplinary proceedings, controlling the attendance of union meetings, and organizing union votes, for example, are plausibly within the scope of a union representative's duties.  See id. ¶¶ 27, 77-78, 89-90, 106.

But there are two issues the Court must address.  First, much of Durand's alleged tortious conduct did not target Pardo directly, but rather concerned Durand's efforts to get the union to support a no-confidence vote against Defendant Principal Xavier Barrios. See id. ¶¶ 89-92, 130-142.  Second, whether Durand was exercising the roles and responsibilities of a union representative when she engaged in tortious conduct does not resolve whether that conduct occurred in her capacity as a union representative.  Put another way, establishing that Durand committed a tort in her capacity as

a union representative requires more than a showing that, when she committed the tort, she happened to be otherwise performing union duties; rather, it requires that the union (the principal) endorsed or approved of her conduct.

Regarding the first issue, Pardo's tortious interference and civil conspiracy claims rely not so much on a specific allegation of misconduct but rather on a pattern of conduct that frustrated the performance of Pardo's contract. See supra Part III(A)(1). Some of this alleged conduct was directed at Pardo, while other conduct was not directed specifically at Pardo but nonetheless contributed to a hostile work environment, which in turn made it more difficult for Pardo to perform her contract. The latter category includes Durand's efforts to organize a union vote against Barrios, whom — according to the Amended Complaint — Durand repeatedly disparaged with racist and homophobic slurs in conjunction with those efforts and in the presence of union officials. Am. Compl. ¶¶ 89-92, 130-134, 138-142. Pardo was not specifically targeted by Durand in these situations, but the Court finds it plausible that Durand's alleged creation of a hostile work environment through her conduct in these and other situations made it more difficult for Pardo to perform her contract. That does not answer the question of whether Pardo will ultimately be able to prove that in creating a hostile work environment, Durand

11

intended to interfere with Pardo's contract.  That question is one that must await discovery and perhaps summary judgment.  For now, the Court reads the Amended Complaint as sufficiently alleging such intent.

Regarding the second issue, just because Durand engaged in tortious conduct while at the same time performing a union function does not automatically render her conduct a union act.  See R.I. Troopers Ass'n v. Div. of State Police, 316 A.3d 1140, 1150-51 (R.I. 2024) (holding that it was reasonable to conclude officer's jail-cell assault of arrestee "was not in the course of performance of his duties").  Several allegations involve Durand using racist or homophobic language while otherwise performing her union roles.  But the relevance of Durand's alleged harassment to Pardo's claims against her, at least in her capacity as a union representative, is complicated.  For starters, Pardo cannot plausibly allege that Durand's remarks fell within the scope of her union duties.  See Faragher v. City of Boca Raton, 524 U.S. 775, 799-800 (1998) (noting general rule that harassment falls outside the scope of employment).  That means TAN is not liable for Durand's harassment unless it ratified her acts.  See Lundgren, 595 A.2d at 816; Drake, 526 A.2d at 519.[2]  The Amended Complaint does not allege any

---

[2] To the Court's knowledge, the Rhode Island courts have not adopted the Restatement (Second) of Agency § 219, which provides additional exceptions to the rule that a principal is not subject

explicit ratification but states that TAN officials were present for some instances of alleged harassment but failed to repudiate Durand's remarks and did not excuse her from the role of union representative for some time.  See Am. Compl. ¶¶ 90, 131, 142, 147, 166.  The Court finds that Pardo has a plausible argument for ratification with respect to these instances.  See Murphy, 507 A.2d at 1345 (finding plausible ratification argument where union failed to quell violence and lacked full knowledge of incidents).

What remains are allegations of harassment that did not occur in the presence of union officials and which Pardo does not allege she reported to union officials.  See, e.g., id. ¶¶ 26-40.  With respect to these instances of harassment, there is no argument for ratification.   But that does not mean these instances are irrelevant to Pardo's claims for tortious interference and civil conspiracy.   Although Durand's contemporaneous statements while performing her union duties did not fall within the scope of those duties, they may nevertheless serve to indicate that she performed her duties with the intent not only to serve the union, but also to interfere with Pardo's contract.  See Restatement (Second) Agency § 228 (implying conduct may fall within scope of employment even if not solely intended to serve employer); see also Pineda v.

---

to liability for the torts of its agents acting outside the scope of their employment.

Chase Bank USA, N.A., 186 A.3d 1054, 1058-59 (R.I. 2018) (applying § 228).

In short, Pardo will have to rely on a patchwork of arguments to succeed on her vicarious-liability claims.  But at this stage, where all reasonable inferences are drawn in the plaintiff's favor, Peñalbert-Rosa, 631 F.3d at 594, the Court finds that Pardo has stated claims for tortious interference and civil conspiracy against Durand in her capacity as a union representative. Therefore, the chance remains that TAN will be found liable for Durand's alleged torts under the theory of respondeat superior.

## B. TAN Motion (Counts VII and X)

Counts VII and X are the only counts of the Amended Complaint in which TAN is explicitly named as a Defendant.  Because the Court finds that Pardo states claims against TAN in both Counts VII and X, the TAN Motion is denied.

### 1. Whether Pardo States a Claim Against TAN in Count VII

Count VII of the Amended Complaint alleges that all Defendants — including TAN — discriminated against Pardo because of her race and national origin in violation of the Rhode Island Civil Rights Act ("RICRA").  Am. Compl. ¶¶ 257-262.  RICRA provides that "[a]ll persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have . . . the same rights to make and enforce contracts."  R.I. Gen. Laws

14

§ 42-112-1.  A plaintiff may bring claims under RICRA alleging the creation of a hostile work environment.  Azar v. Town of Lincoln, 173 A.3d 862, 865-66 (R.I. 2017); see also Gill v. Alexion Pharm., Inc., No. 18-cv-696, 2019 WL 3470771, at *4 (D.R.I. July 31, 2019). To state such a claim (with respect to racial discrimination), a plaintiff must establish

> 1) that he is a member of a protected class; 2) that he was subjected to unwelcome racial harassment; 3) that the harassment was based upon race; 4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; 5) that racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and 6) that some basis for employer liability has been established.

Gill, 2019 WL 3470771, at *4 (quoting Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 317 (1st Cir. 2016)).

The allegations in the Amended Complaint support each element of a hostile work environment claim as against TAN.  If Pardo's allegations are true, Durand subjected her to a pervasive course of harassment based on her race and national origin that was offensive in both objective and subjective terms.  See, e.g., Am. Compl. ¶ 28 (alleging Durand stood over Pardo and said, "[j]ust remember your place.  Don't forget that you are brown."); see also Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415-16 (10th Cir. 1987) (holding that incidents of harassment directed at employees other

than plaintiff can be used as proof of the plaintiff's hostile work environment claim in Title VII case). With respect to the sixth element, as noted in the previous subsection, Pardo has established some basis for employer liability with respect to these claims. See <u>supra</u> Part III(A)(2). Therefore, the Court finds that Pardo's RICRA claim against TAN may proceed.

**2. Whether Pardo States a Claim Against TAN in Count X**

Pardo also states a claim against TAN for breach of the duty of fair representation.[3] Pardo's fair-representation claim against TAN is predicated on three allegations: (1) that Durand threatened to withdraw the union's representation of Pardo if she reported a co-Defendant's misconduct to school officials; (2) that TAN permitted Durand to create a hostile work environment and retaliate against Pardo for complaining of discrimination; and (3) that TAN failed to adequately train, manage, and supervise Durand. Am. Compl. ¶¶ 282-284. She seeks damages for pecuniary loss and emotional distress. Id. ¶ 285.

A union breaches the duty of fair representation "only when [its] conduct toward a member of the collective bargaining unit is

---

[3] Rhode Island law recognizes a duty of fair representation with respect to public employee unions. See <u>Forbes v. R.I. Broth. of Corr. Officers</u>, 923 F. Supp. 315, 327-28 (D.R.I. 1996) (citing <u>Belanger v. Matteson</u>, 346 A.2d 124, 129 (R.I. 1975), <u>cert. denied</u>, 424 U.S. 968 (1976)).

arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). This rule "applies to all union activity," i.e., "instances in which the union is acting in its representative role." Air Line Pilots Ass'n, Int'l v. O'Neil, 499 U.S. 65, 67, 77 (1991); see Agosto v. Corr. Officers Benevolent Ass'n, 107 F. Supp. 2d 294, 303 (S.D.N.Y 2000). To state a claim for a breach of the duty of fair representation, a plaintiff need not allege the employer violated the collective bargaining agreement. Alicea v. Suffield Poultry, Inc., 902 F.2d 125, 130 (1st Cir. 1990) (citing Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 80-81 (1989)).

If Pardo manages to prove that some or all of Durand's alleged tortious conduct occurred in her capacity as union representative, then she may have a viable claim against TAN for breaching its duty of fair representation. But if Pardo succeeds only on her individual-capacity claims against Durand and not on the union-capacity claims, or if she cannot prove tortious interference at all, then her fair-representation claims against TAN will fail as well. Recognizing the uncertainty here, the Court nevertheless allows the fair-representation claims against TAN to proceed past the pleading stage. If in the end TAN is held liable under the doctrine of respondeat superior for Durand's tortious interference with Pardo's contract, then it would follow that TAN's conduct

toward Pardo was discriminatory or in bad faith. Whether TAN's conduct caused Pardo financial harm or was sufficiently outrageous to warrant damages for emotional distress is a question for a later time. See De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281, 293 (1st Cir. 1970) (noting it would be an "exceptional case" for a union's "extreme conduct" to warrant an award for emotional distress), cert. denied, 400 U.S. 877 (1970), overruled in part by Bowen v. USPS, 492 U.S. 212 (1983).

## C. Motion to Strike

Finally, the Court denies TAN's Motion to Strike. The June 2024 order directed Pardo to amend her Complaint with respect to the allegations against Durand in Counts XI and XII, which allege tortious interference and civil conspiracy. Text Order (June 17, 2024). TAN argues that nearly all the paragraphs Pardo thereafter amended to her Complaint fall outside the scope of the order and must therefore be stricken. Mot. Strike 19-20.

According to TAN, the offending paragraphs are numbers 33, 35, 57-59, 66, 77-93, 106, 130-149, 167, 176-179, 203-205, and 210. Id. at 19. The Court finds these paragraphs are relevant — some however slightly — to Pardo's allegations against Durand in Counts XI and XII. And, in any event, the Court likely would have granted Pardo leave to amend her Complaint with these allegations absent or despite the order if the period for amending pleadings

18

had not expired while the Motions were pending.  <u>See</u> Pretrial Scheduling Order.

**IV.  CONCLUSION**

For the reasons above: Teachers' Association of Newport and Erika Durand's Motion to Dismiss Counts XI and XII as Against Erika Durand and Motion to Strike Portions of the Amended Complaint, ECF No. 39, are DENIED; and Defendant Teachers' Association of Newport's Amended Motion to Dismiss Pursuant to Rule 12(b)(6), ECF No. 40, is DENIED.


IT IS SO ORDERED.

_____
William E. Smith
Senior District Judge
Date: May 16, 2025