# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

Olga Pardo,  )
    Plaintiff,  )
        )
  v.  )     C.A. No. 1:24-cv-00111-MRD-AEM
        )
City of Newport, et al.,  )
    Defendants.  )
        )

## MEMORANDUM AND ORDER

AMY E. MOSES, United States Magistrate Judge.

Before the Court for determination are two motions: Plaintiff Olga Pardo's Motion to Compel Production and Responses to Deposition Questions (ECF No. 65) and Newport Defendants' Motion to Compel Production from Plaintiff[1] (ECF No. 66). The matter was referred to me for determination pursuant to 28 U.S.C. § 686(b)(1)(A) and Federal Rule of Civil Procedure 72(a). Based upon my review of the record, the parties' submissions, and independent research, Plaintiff Olga Pardo's Motion to Compel is GRANTED and Newport Defendants' Motion to Compel is GRANTED IN PART.

---

[1] Filed by Defendants City of Newport; James Dring, Sandra Flowers, Kendra Muenter, Rebecca Bolan, Robert Leary, Stephanie Winslow, and Louisa Boatright, individually and in their capacities as members of the Newport School Committee; Colleen Jermaine, individually and in her capacity as Superintendent of Schools; Xavier Barrios, individually and in his capacity as Principal, Thompson Middle School; Michael Browner, individually and in his capacity as Principal, Thompson Middle School; Megan Cawley, individually and in her capacity as a Teacher in the Newport Public Schools; Eileen Rearick; and Deborah Grover, collectively, "Newport Defendants." ECF No. 66 at 5.

## I.    Factual Background

This litigation arises from an employment dispute between Ms. Pardo, a Spanish teacher, and the City of Newport and the Newport School Committee (collectively, the "City"), several members of the Newport School Committee, and several employees of the Newport Public Schools. ECF No. 36 ¶¶ 1-13. Ms. Pardo alleges that the Newport Defendants unlawfully discriminated and retaliated against her on the basis of race, national origin, and disability. *Id.* ¶¶ 215-98.

Ms. Pardo alleges that a fellow teacher, Erika Durand, engaged in racially harassing behavior toward herself and Xavier Barrios, the former principal of Thompson Middle School. ECF No. 65 at 3. This behavior included calling Ms. Pardo "brown" and telling her to know her "place," as well as calling Mr. Barrios a "faggot." *Id.* at 3-4. Ms. Pardo further alleges that the City and its officials tolerated this behavior, leading to the creation of a hostile work environment. *Id.* at 4. Specifically, Ms. Pardo references an investigation the City conducted into prior complaints from Mr. Barrios about Ms. Durand that found that Ms. Durand had engaged in racially harassing behavior toward both Mr. Barrios and Ms. Pardo. *Id.* Despite the investigation recommending corrective action and discipline against Ms. Durand, as well as Superintendent of Schools Colleen Jermaine concurring in that recommendation, the School Committee refused to impose any disciplinary action against Ms. Durand. *Id.*

## II.    Plaintiff Olga Pardo's Motion to Compel

### A.    Background

Ms. Pardo attests that during discovery she learned that the recommended discipline of Ms. Durand was discussed during School Committee executive sessions on August 11, 2023 and August 28, 2023. *Id.* Ms. Pardo was able to glean some of what occurred at the executive sessions

2

through depositions.  *Id.*  For example, at her October 15, 2025 deposition, Ms. Durand testified that she and her union representative attended the August 28, 2023 executive session and discussed the investigation findings regarding whether she contributed to a hostile work environment.  *Id.* at 4-5; ECF No. 65-2 at 37.  Rebecca Bolan, Newport School Committee Chair, testified at her March 23, 2026 deposition that the School Committee voted during the August 11, 2023 executive session on whether to discipline Ms. Durand.  ECF No. 65 at 5; ECF No. 65-4 at 22.  When Ms. Pardo inquired further of Chair Bolan about what happened at the August 11, 2023 and August 28, 2023 executive sessions, Chair Bolan's counsel objected and gave instructions not to testify about any decisions made in executive session.  ECF No. 65 at 6; ECF No. 65-4 at 22-23.

The City asserted privilege over the executive session minutes from the August 11, 2023 and August 28, 2023 meetings through its privilege log, relying on three bases:  Rhode Island's Open Meetings Act (the "OMA"); deliberative process privilege; and attorney-client privilege. ECF No. 65 at 6-8.  Ms. Pardo now asks the Court to overcome the City's invocation of the OMA and assertion of deliberative process privilege and compel the City to produce both executive session minutes with attorney-client communications redacted.  *Id.* at 1.  Ms. Pardo also seeks an order compelling the City to continue Chair Bolan's deposition to have her answer the questions about what was decided at the executive session that she was instructed not to answer.  *Id.*  The City objected, arguing that its assertions of privilege are proper.  ECF No. 67-1 at 1.

### B.    Legal Standard

The party seeking to compel discovery bears the burden of showing that the requested discovery is relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1); *see TG Plastics Trading, Co. v. Toray Plastics*, C.A. No. 09-336S, 2010 WL 936221, at *2 (D.R.I. Mar. 12, 2010).  Once a party asserts privilege, "[t]he burden of showing that documents are privileged

rests with the party asserting the privilege." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 69 (1st Cir. 2011); *see also In re Polygon Glob. Partners LLP*, No. 21-MC-007 WES, 2022 WL 112050 at *2 (D.R.I. Jan. 12, 2022).

### C.    Discussion

#### 1.    Open Meetings Act

Ms. Pardo argues that the mere fact that actions and discussions took place in executive session of a public meeting, without more, does not create an evidentiary privilege that would warrant an instruction not to testify, nor does it provide a basis to withhold documents from disclosure. ECF No. 65 at 6-7. In response, the City argues that the OMA is an "independent and well-established [basis] for withholding" documents. ECF No. 67-1 at 2. The City later clarifies that the OMA "expressly contemplates that a public body may, by majority vote, maintain the confidentiality of executive session minutes" and that this "reinforces [] the deliberative process and attorney-client privileges being asserted here." *Id.* at 7.

The OMA seeks to ensure "that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy" by establishing standards for conduct and record-keeping of the meetings of public bodies. R.I. Gen. Laws § 42-46-1. The OMA governs access to meetings and records of public bodies; it does not create discovery privileges. Nothing in the OMA refers to the establishment of a privilege and the City provides no authority for such a privilege.

Although the City is correct that under the OMA, the majority of a public body may "vote[] to keep the minutes closed," R.I. Gen. Laws § 42-46-7(c), this has nothing to do with withholding otherwise discoverable information as privileged. Thus, the Court finds that the minutes of both

4

the August 11, 2023 and August 28, 2023 executive sessions are not protected from disclosure in discovery by the OMA.

During her deposition, Chair Bolan was instructed not to answer questions about what took place in the executive sessions. ECF No. 65 at 6; ECF No. 65-4 at 22-23. Because the OMA does not create a privilege in executive sessions, the Court finds that Chair Bolan's deposition must continue and that her counsel cannot object to questions about what transpired during the executive session on the basis that it was an executive session.

### 2.    Deliberative Process Privilege

Ms. Pardo argues that if Ms. Durand and her union representative attended the August 28, 2023 executive session, their presence as third parties would negate any deliberative process privilege. ECF No. 65 at 8. Moreover, Ms. Pardo asserts that even if the deliberative process privilege applied, it can be overcome to uncover government misconduct and therefore is overcome in this case. *Id.* Finally, she points out that any vote taken would not be protected by the deliberative process privilege because it shields only pre-decisional discussions. ECF No. 68 at 2-3.

In contrast, the City contends that the executive sessions in question represent the internal policy-making process of a public body, which is what the deliberative process privilege intends to protect. ECF No. 67-1 at 6. The City also argues that the "government misconduct" test for overcoming the deliberative process privilege does not apply here because the case cited by Ms. Pardo was in the context of constitutional challenges and that is a "qualitatively different order of magnitude" from the school committee failing to discipline Ms. Durand. *Id*. at 6-7.

The purpose of the deliberative process privilege is to allow officials to communicate candidly with one another, without publicity. *Am. Trucking Ass'ns, Inc. v. Alviti*, 496 F. Supp. 3d

699, 715 (D.R.I. 2020).  It protects communications and documents that are both (1) pre-decisional (generated before the adoption of a final agency decision), and (2) deliberative (demonstrative of the internal back-and-forth discussions before the decision).  *Id.*  Here, the back-and-forth of the school committee members at the executive sessions appears to fall within this privilege, at least until the point the vote was taken on whether to discipline Ms. Durand.

The deliberative process privilege, however, is "qualified" and "is not absolute."  *Texaco Puerto Rico, Inc. v. Dep't Consumer Affs.*, 60 F.3d 867, 885 (1st Cir. 1995).  As the First Circuit has explained:

> [I]n determining whether to honor an assertion of the privilege, a court must weigh competing interests.  At bottom, then, the deliberative process privilege is a discretionary one.  In deciding how to exercise its discretion, an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government.  Consequently, where the documents sought may shed light on alleged government malfeasance, the privilege is routinely denied.

*Id.* (cleaned up).  Given that the allegations at stake involve serious civil rights violations, the Court disagrees with the City that this is a "qualitatively different order of magnitude" from other cases in which the privilege has been overcome.[2]  Failure of a government entity to discipline its employees for civil rights violations is a matter of public concern.  As a result, the Court finds that the City has not met its burden to show that the executive session minutes from August 11, 2023 and August 28, 2023 are protected by the deliberative process privilege.

---

[2] This Court has recognized that the deliberative process privilege applies in some instances, for example, to the internal communications by prison staff when deciding whether to transfer a prisoner in cases alleging retaliatory prison transfer.  *See Briggs v. Amado*, No. CV 22-31-WES, 2024 WL 3163058, at *2-3 (D.R.I. June 25, 2024), *reconsideration denied*, No. CV 22-31-WES, 2024 WL 3952631 (D.R.I. Aug. 27, 2024).

### 3.      Attorney-Client Privilege

Ms. Pardo argues that because Ms. Durand and her union representative attended the August 28, 2023 executive session, attorney-client privilege did not exist for at least the portion of the executive session that they attended on that day.  ECF No. 65 at 7.  The City counters that attorney-client privilege applies to communications between a municipal public body and its legal counsel and thus applies to the entirety of the executive session minutes for both meetings; the City does not address the substantive effect of the presence of Ms. Durand and her union representative in executive session.  ECF No. 67-1 at 3-5, 11.  Furthermore, the City objects to producing executive session minutes because they are not a transcript and thus cannot be cleanly separated into discoverable and non-discoverable lines the way a transcript can.  *Id.* at 8.  This, the City says, cuts against Ms. Pardo's request to provide the minutes with the portions regarding legal advice redacted.  *Id.* at 9.

There is no dispute that attorney-client privilege applies to governmental bodies and their communication with their lawyers, such as the school board.  *See Neece v. City of Chicopee*, 106 F.4th 83, 98 (1st Cir. 2024).  The law is also well settled, however, that attorney-client privilege is waived when third parties are present for those communications.  *See In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003).

Here, because there were third parties present at the August 28, 2023 executive session, attorney-client privilege was waived at least as to the portions for which those third parties were present.  Furthermore, as to both sessions, any minutes not pertaining to legal advice are not protected by the attorney-client privilege.  And given that parties routinely redact attorney-client privileged materials from documents that are not transcripts, the Court finds that the City should

be able to redact any portions of the executive session minutes for which attorney-client privilege applies.[3]

### III.    Newport Defendants' Motion to Compel

#### A.    Background

During her deposition, Ms. Pardo testified that she kept a "timeline" in an Excel spreadsheet on her personal laptop of alleged incidents of discrimination and unfair treatment during her employment that gave rise to her claims in this action.  ECF No. 66 at 2; ECF No. 66-2 at 10.  After the deposition, Newport Defendants requested—and Ms. Pardo provided—the timeline document in native format.  ECF No. 66 at 2-3.  Newport Defendants were unable to access any metadata associated with the timeline and requested that metadata to learn "whether the timeline document was truly created 'daily' as [Ms. Pardo] testified."  *Id.* at 3.  Counsel for Newport Defendants emailed Ms. Pardo's counsel requesting that Ms. Pardo's personal laptop be delivered to Newport Defendants' counsel's "digital forensics guy" to allow him to extract the metadata, which usually "takes like an hour or so."  ECF No. 66-6.  The email request went unanswered and Newport Defendants now seek a court order requiring Ms. Pardo to provide her personal laptop to a neutral forensic vendor and then produce the timeline's metadata.  ECF No. 66 at 5.

#### B.    Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  If a party fails to respond to discovery requests, the party seeking the discovery may move to compel

---

[3] If the City is unable to do so, then it may consider requesting an informal discovery dispute conference with the Court to explain its inability to redact.

pursuant to Federal Rule of Civil Procedure 37(a)(1).  Evidence is relevant if it "has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "The party moving to compel bears the initial burden of showing the relevance of the information sought.  If the moving party makes such a showing, the burden shifts to the objecting party to show that a discovery request is improper."  *Noel v. United Better Homes, LLC*, Case No. 1:23-cv-00028-SJM-TLSM, 2025 WL 1330557 at *1 (D.R.I. Jan. 28, 2025) (cleaned up).

### C.    Discussion

Newport Defendants argue that the information contained in the metadata is highly relevant and proportional because whether the alleged instances of discrimination were recorded contemporaneously goes to Ms. Pardo's credibility, as well as the claims and defenses in this case.  ECF No. 66 at 3-4.  They posit that the timing of when information was entered into the timeline lends "more or less accuracy" to the entries, *id.* at 3, and that the metadata will indicate "exactly and with specificity how far into the 'summer of 2023' she first began to work on this timeline, the frequency with which she added to it, particular modification dates, and versioning of the spreadsheet."  ECF No. 70 at 2-3.  Ms. Pardo counters that this request is not proportional to the needs of the case and that because she did not testify that the timeline was kept contemporaneously, there is no probative value in the metadata.  ECF No. 69 at 1-2.  She further contends that a forensic examination of her laptop would be "burdensome and intrusive on her privacy."  *Id.* at 2.

Deposition transcripts provide varying accounts of when the timeline was created and when entries were made:

- On December 19, 2025, Ms. Pardo testified that she "kept a timeline everyday of the incidents that would occur to me on a daily basis, plus do what I could to do my

job as well.  It was daily, daily."  ECF No. 66-2 at 10.  When asked "When did you begin working on this timeline?," she responded, "the first day that I started school there" in September 2021.  *Id.*  She explained that she "started handwritten in a notepad, and then [] started documenting it on [her] computer and making a timeline . . . ."  *Id.* at 11.

- On February 5, 2026, Ms. Pardo testified that she was first writing in a notepad and then started a timeline.  ECF No. 66-3 at 7.  When asked when she started the timeline, she responded that she did not remember.  *Id.*  She explained that "There were so many incidents from being ostracized by all teachers, that I just try to keep track of as much as I could, the time, a period, who did it, and I would just write, and when I would have time, I would go and go and have my planner in my car and try to do this."  *Id.*  She specified that when she was in her car writing her timeline, she was writing it on her laptop.  *Id.* at 7-8.

- On March 10, 2026, Ms. Pardo testified that she created the timeline document when she "was looking for attorneys" around the summer of 2023, but she did not "recall the exact time."  ECF No. 66-5 at 6, 7.  When asked if she was "looking at other notes or documents to input the information," she responded that "[t]here was so much going on, I would just write down little notes here and there in a piece of paper, and I just kept writing stuff and stuff, and when I created my timeline, I went back to look at the emails and write down the stuff that I created with little pieces of paper."  *Id.* at 8-9.  She said she started creating the timeline in "2021, 2022.  It was right around after that time all this stuff was going on."  *Id.* at 9.

10

Given the variations in Ms. Pardo's deposition testimony as well as the critical nature of the information she input, the timing of her creating the timeline and entering information into it is both relevant and proportional. The Court is not yet convinced, however, that Ms. Pardo's counsel must be ordered to produce Ms. Pardo's personal laptop to a neutral forensic vendor.

Within 30 days of this Order, Ms. Pardo shall both extract the metadata from the timeline Excel document and produce that metadata to Newport Defendants. If Ms. Pardo fails to do so, then the parties shall promptly meet and confer on a plan to permit a neutral forensic vendor to examine Ms. Pardo's personal laptop to extract the metadata for the timeline, as well as a protective protocol to safeguard Ms. Pardo's privacy.

### IV.    Conclusion

For the reasons detailed above, Ms. Pardo's Motion to Compel Production and Responses to Deposition Questions (ECF No. 65) is GRANTED. The City is hereby ordered to produce the minutes from both the August 11, 2023 and August 28, 2023 executive sessions. Consistent with this Memorandum and Order, the City may redact information protected by the attorney-client privilege. If redactions are made, then the City shall produce a privilege log with the minutes. The Court also directs the City to continue the deposition of Chair Bolan, during which time she may be asked about the events that occurred in executive session. Counsel cannot object to questions about what happened during the executive sessions on the basis that the matters were in executive session or because of the deliberative process privilege. Ms. Bolan's counsel can only object on the basis of the attorney-client privilege if the question pertains to matters that happened when no third parties were present and in fact calls for matters protected by the attorney-client privilege.

Newport Defendants' Motion to Compel Production from Plaintiff (ECF No. 66) is GRANTED IN PART. Ms. Pardo has 30 days from this Memorandum and Order to provide

11

Newport Defendants with the metadata from the timeline.  If she does not comply, then the parties shall promptly meet and confer on a plan to permit a neutral forensic vendor to examine Ms. Pardo's personal laptop to extract the metadata for the timeline document, as well as a protective protocol to safeguard Ms. Pardo's privacy.

It is so ordered.


 /s/   Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

June 3, 2026